IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHERYL HALL | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04 C 7294 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| NALCO COMPANY, F/BA ONDEO | ) |
| NALCO COMPANY, A Delaware | ) |
| corporation, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before this Court is defendant Nalco Company's ("Defendant" or "Nalco") motion for summary judgment against plaintiff Cheryl Hall ("Plaintiff" or "Hall"). For the reasons set forth below, Defendant's motion is granted.

**I. FACTS**

In April 1997, Plaintiff was hired by Defendant's manufacturing facility. In April 2000, Plaintiff began working as a sales secretary, reporting to Marv Baldwin who managed a sales district in the Chicago area. Baldwin reported to Geordie Hamilton, the regional sales manager for Defendant's central region. There also existed another sales office in Chicago, managed by Steve Loman, and where Shana Dwyer worked as Loman's secretary.

In early 2003, Plaintiff informed Baldwin that she wished to take a leave of absence from work in order to undergo fertility treatment. In March 2003, Plaintiff formally requested and

-1-

Baldwin approved her leave of absence for fertility treatment, from March 24, 2003 to April 21, 2003. Plaintiff returned to the same position following her leave of absence. At the end of April 2003, Plaintiff informed Baldwin that she planned to undergo infertility treatment again. On or around July 21, 2003, Plaintiff filed another application for a leave of absence.

In January 2003, in an effort to reduce operating costs, Defendant began to reorganize. By mid-June 2003, Hamilton decided to consolidate the two sales offices in Chicago, as well as the secretary positions of the two offices. At the end of July 2003, Baldwin informed Plaintiff that the sales office was consolidating and moving to Naperville, Illinois. Further, he informed Plaintiff that Dwyer would assume Plaintiff's position in the consolidated office.

On or about August 5, 2003, Plaintiff sent Baldwin an email requesting information about the status of her second leave of absence application. On August 6, 2003, Baldwin informed Plaintiff that she was terminated with an effective date of August 31, 2003.

On March 11, 2004, Plaintiff filed a Charge of Discrimination (No. 210-2004-03698) with the Equal Employment Opportunity Commission. In it, she alleged discrimination based upon sex. On August 13, 2004, Plaintiff received a Dismissal and Notice of Right to Sue for Plaintiff's Charge No. 210-2004-03698. Plaintiff then filed her complaint in this lawsuit on November 10, 2004.

**II.     SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, along with any affidavits, show there is no genuine issue of fact. Such a showing entitles the moving party to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 720 (7th Cir. 2004). A genuine issue of material fact exists only when a reasonable factfinder could find for the nonmoving party, based on the record as a whole. The court does not weigh the evidence and it does not make credibility determinations. Instead, the court makes all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). If a party fails to present proof on an essential element of his or her case, then all other facts become necessarily immaterial. *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 509 (7th Cir. 1999).

**III. ANALYSIS**

The Plaintiff's discrimination claim is pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e)-2, as amended by the Pregnancy Discrimination Act (PDA), 42 U.S.C. §2000(e)(k). Title VII requires the plaintiff to show that the employer would not have taken the alleged adverse employment action against the plaintiff but for plaintiff's membership in a protected class. *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060, 1061 n.4 (7th Cir. 2003). The burden lies with the plaintiff to demonstrate that she is within the protected class. *Id.*

Title VII discrimination "on the basis of sex" was amended by the PDA to include discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. §2000(e)(k) (1994). Plaintiff states that she "is a member of a protected

class, female with a pregnancy related condition, infertility." (Comal. ¶ 21). At issue is whether a reasonable jury could find that infertility is included in the meaning of the phrase "related medical conditions" of the PDA, such that the Plaintiff falls within the protected class of those discriminated against on the basis of sex.

The PDA protects women from pregnancy discrimination, where the discriminatory condition is "unique to women." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 346 (2d Cir. 2003). Only when there is some disparity in treatment on account of an individual's sex does Title VII protection become properly invoked. Infertility is a "medical condition that afflicts men and women with equal frequency." *Id*. The Second Circuit has found that "including infertility within the PDA's protection as a 'related medical condition' would result in the anomaly of defining a class that simultaneously includes equal numbers of both sexes and yet is somehow vulnerable to sex discrimination." *Id*. This is "incompatible with the PDA's purpose of clarifying the definition of 'because of sex'." *Id.* See also *Int'l Union, United Auto., etc. v. Johnson Controls*, 499 U.S. 187, 198 (U.S. 1991). Further, neither the legislative history nor the EEOC guidelines reference infertility treatments or suggest that infertility should fall within the scope of the PDA. *Krauel v. Iowa Methodist Medical Ctr*., 95 F.3d 674, 679-80 (8th Cir. 1996). Thus, "infertility standing alone does not fall within the meaning of the phrase 'related medical conditions' under the PDA." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 346 (2d Cir. 2003); *Krauel v. Iowa Methodist Medical Ctr*., 95 F.3d 674, 679-80 (8th Cir. 1996). The Seventh Circuit has not addressed this issue. While this court is not bound by the decision of other circuits, it does give due weight to their reasoning. *Fuller v. Skornicka*, 79 F.3d 685, 687 (7th Cir. 1996). We find no reason to disagree.

While the cited cases address Title VII insurance coverage claims, the reasoning equally applies to Title VII adverse employment actions based on infertility. The Plaintiff alleges that she was terminated because she was undergoing infertility treatments. As stated above, infertility alone does not fall within "related medical conditions" of the PDA, and seeking infertility treatment does not give rise to grounds for sex discrimination. The fact that the Plaintiff happens to be a woman in the present case does not qualify her for protection under Title VII. Thus, the plaintiff does not fall within a protected class.

Summary judgment for the defendant is appropriate on the grounds that no reasonable jury could find that the Plaintiff falls within the protected class of those discriminated against on the basis of sex.

**IV.    CONCLUSION**

For the foregoing reasons, summary judgment is granted to the Defendant. All other motions are moot and terminated. This case is closed.

    Enter:

    /s/David H. Coar
    _____
    David H. Coar
    United States District Judge

Dated: **September 12, 2006**